# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**PT NGUYEN, INC. D/B/A JASMIN FOOD MART**

**VERSUS**

**UNITED STATES OF AMERICA**

**CIVIL ACTION**

**NO: 18-00062-JWD-EWD**

## RULING AND ORDER

This matter comes before the Court on *Defendant United States of America's* ("Defendant" or "United States") *Motion for Summary Judgment.* (Doc. 17). Plaintiff, PT Nguyen, Inc. d/b/a Jasmin Food Mart ("Plaintiff" or "Jasmin Food Mart"), opposed the motion. (Doc. 20). Defendant replied. (Doc. 21). The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendant's motion for summary judgement is granted.

## I. Relevant Factual and Procedural Background

Jasmin Food Mart, under the ownership of Peter Q. Nguyen, Nhung N. Tu, Thinh Q. Nguyen, and Kim Thoa Nguyen, is a Louisiana corporation that operates a retail convenience store and food market on North Sherwood Forest Drive in Baton Rouge, Louisiana. (Doc. 1, ¶¶ 1, 7). Plaintiff alleges that "at all times relevant hereto", Jasmin Food Mart was an authorized participant retailer in the Supplemental Nutrition Assistance Program ("SNAP"). (*Id.*). SNAP is administered by the United States Department of Agriculture ("USDA"), Food and Nutrition Service ("FNS"). (Doc. 1, ¶ 1).

On October 17, 2016, Plaintiff alleges that the FNS issued a letter to Jasmin Food Mart, alleging that records of Electronic Benefit Transfer ("EBT") transactions at Jasmin Food Mart

between the months of April 2016 and November 2016[1] showed "clear and repetitive patterns of unusual, irregular, and inexplicable activity for [Jasmin's] type of firm." (Doc. 1, ¶ 8). SNAP benefits are issued to households through an EBT system. SNAP benefits are stored in a central computer database and electronically accessed by households at the point of sale via reusable plastic cards. SNAP benefits may also be issued through an off-line EBT system in which benefit allotments can be stored on a card or in a card access device and used to purchase authorized items at a point-of sale terminal. FNS monitors retailer transaction data through EBT system reporting. (Doc. 1, ¶ 6).

In its letter to Plaintiff, the FNS alleged that the EBT records showed (1) multiple transactions were made from individual benefit accounts in unusually short time frames; and (2) excessively large purchase transactions were made from recipient accounts. (Doc. 1, ¶ 8). Based on this information, the FNS charged Jasmin Food Mart with "trafficking" as defined by 7 C.F.R. § 271.2. (*Id*.).

On October 24, 2016, Jasmin Food Mart alleges that it responded to the charges and provided a written explanation regarding the EBT records. (Doc. 1, ¶ 9). Plaintiff asserted that many of its customers shopped daily, if not multiple times per day. Plaintiff noted that its fresh seafood sales accounted for the higher priced transactions. Plaintiff asserted that there was a higher volume of SNAP recipients following the flooding in Baton Rouge in August 2016. Also, during this time, SNAP participants were permitted to purchase hot food items not ordinarily eligible for

---

[1] In its Complaint, Plaintiff alleges the time period of April-November 2016 for the investigation. (Doc. 1, ¶ 8). Defendant's motion refers to the period April-September 2016 as the investigation period. (Doc. 17-1, p. 6). The Charge Letter issued by the FNS is dated October 2016, before Plaintiff's alleged time period expired. (A.R. 122-141). The Court believes that the relevant investigation time period to be April-September 2016, as more fully set forth herein.

purchase with SNAP benefits, which increased the volume of purchases with SNAP benefits at the store.  (Doc. 1, ¶ 10).

Plaintiff alleges that it provided FNS with additional information and supporting documentation in response to the charges, including inventory invoices from seafood and meat distributors, between October 24, 2016 and November 3, 2016.  (Doc. 1, ¶ 11).

On July 5, 2017, FNS issued a letter to Jasmin Food Mart, advising that it had reviewed the available information and found that the violations had occurred as cited.  FNS then permanently disqualified Jasmin Food Mart from SNAP pursuant to 7 C.F.R. §§ 278.6(c), 278.6(e)(1).  (Doc. 1, ¶ 12).

In response, Jasmin Food Mart made a written request on July 14, 2017, for a review of the FNS decision.  Plaintiff alleges that it reiterated its previous contentions and provided additional documentation for transactions between April 2016 and October 2016.  Plaintiff also requested the results of the FNS investigation.  (Doc. 1, ¶ 13).

FNS issued its final agency decision dated December 28, 2017, upholding the permanent disqualification of Jasmin Food Mart.  (Doc. 1, ¶ 15).  Plaintiff alleges that FNS improperly relied "solely on analysis of EBT records and disregarded or gave insufficient consideration to facts presented by Jasmin Food Mart and/or information that was otherwise available to the FNS, concerning the nature of Jasmin Food Mart's business, its purchases and sales, its customers' typical transactions, and the extenuating circumstances surrounding the time period of the investigation".  (Doc. 1, ¶ 16).  Plaintiff alleges that FNS "failed to consider the nature and scope of the alleged violations", failed to warn Jasmin Food Mart about the possibility of violations, and failed to evidence Jasmin Food Mart's intent to violate SNAP regulations.  (Doc. 1, ¶ 17).

Plaintiff instituted suit pursuant to 7 U.S.C. § 2023 for *de novo* judicial review of the final agency decision by the FNS, which permanently disqualified Jasmin Food Mart from participation as an authorized retailer in SNAP.  (Doc. 1, ¶ 1).

## II.    Relevant Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts … [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citations omitted).  The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(citations and internal quotations omitted).  The party opposing the motion for summary judgment may not sit on his hands, complacently relying on the pleadings.  *Weyant v. Acceptance Ins. Co.*, 917 F.2d 209 (5th Cir. 1990).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.  General allegations that fail to reveal detailed and precise facts will not prevent the award of summary judgment.  *Walton v. Alexander*, 20 F.3d 1350, 1352 (5th Cir. 1994).  Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

## III. Discussion

### A. Parties' Arguments

#### 1. Defendant's Memorandum in Support (Doc. 17-1)

Defendant explains that the FNS utilized the Anti-Fraud Locator Using Electronic Benefit Transfer Retailer Transactions ("ALERT") System to monitor and identify suspicious patterns of EBT card usage that may suggest SNAP benefits are being trafficked. (Doc. 17-1, p. 4 (citing Doc. 17-3, p. 3; *Rockland Convenience Store v. United States*, Civ. A. No. 10-260, 2011 WL 5120410, *3 (D.N.H. Oct. 27, 2011)). In 2016, the ALERT System "flagged" Plaintiff's EBT transaction data as having met patterns consistent with possible SNAP trafficking violations. (Doc. 17-1, p. 6 (citing A.R. 104)). As a result, FNS opened an investigation and analyzed data covering a six-month period from April 2016 through September 2016. (Doc. 17-1, p. 6 (citing A.R. 103-121)). A "Charge Letter" was issued on October 17, 2016, by FNS to Plaintiff, notifying Jasmin Food Mart of a charge of trafficking in SNAP benefits. (Doc. 17-1, p. 7 (citing A.R. 122-141)). The Charge Letter identified instances of multiple transactions from individual SNAP accounts in a short time frame. (Doc. 17-1, p. 7 (citing A.R. 122; 125)). Defendant provides examples of the "flagged" transactions. (Doc. 17-1, p. 7).

Plaintiff submitted a written response to the Charge Letter on October 24, 2016. (Doc. 17-1, p. 8 (citing A.R. 144-145)). Defendant admits that Plaintiff explained the effects of the flood of August 2016, as well as its seafood business and customer purchasing habits. (*Id.*).

Defendant issued a "Determination Letter" on July 5, 2017, informing Plaintiff that the charged trafficking violations had occurred and permanently disqualified Jasmin Food Mart from SNAP. (Doc. 17-1, p. 8 (citing A.R. 223-226)). On July 14, 2017, Plaintiff requested

administrative review with the Administrative Review Branch of the FNS. (Doc. 17-1, p. 9 (citing A.R. 229-231)). Plaintiff claimed that the charge of trafficking and resulting disqualification of Jasmin Food Mart from SNAP was "arbitrary, without cause, and in violation of Plaintiff's due process rights". (*Id*.). The Administrative Review Officer requested additional information on July 19, 2017, and Plaintiff submitted same on August 1, 2017. (Doc. 17-1, p. 9 (citing A.R. 265-266, 270-1463)). Plaintiff reiterated that it provided documentation to justify the high volume of sales of higher priced items and of SNAP benefits transactions; that high dollar transactions and increased frequency of SNAP benefits was attributed to the August 2016 flood, later implemented by FNS as the "Special Disaster Rules"; that FNS authorized SNAP benefits for purchasing hot foods through October 17, 2016; that FNS did not conduct an on-site investigation; and FNS did not charge Plaintiff with a violation of SNAP prior to this time. (Doc. 17-1, pp. 9-10).

A "Final Agency Decision" was issued December 28, 2017, supporting the trafficking determination and permanent disqualification of Plaintiff from SNAP. (Doc. 17-1, p. 10 (citing A.R. 1471-1486)).

Defendant's primary argument is that the evidence supports that trafficking did, in fact, occur, and that it is Plaintiff's burden to show that the violation, *i.e.,* trafficking, did not occur. Defendant groups the "hundreds of … EBT transactions that cannot be explained as the exchange of SNAP benefits for eligible food" into four categories: (1) "multiple withdrawals from the same account in short timeframes", (Doc. 17-1, pp. 13-14); (2) "excessively large transactions", (Doc. 17-1, pp. 14-15); (3) there are many other SNAP retailers in the area, and customers were not dependent on Jasmin Food Mart, (Doc. 17-1, pp. 15-16); and (4) the flood of August 2016 and the hot foods exception do not explain the statistical data, (Doc. 17-1, pp. 16-17). Defendant argues that since a firm may be permanently disqualified based on a single incident of trafficking, Plaintiff

must prove that every suspicious transaction was legitimate. (Doc. 17-1, p. 18 (citing 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(e)(1)(i); *Idias v. United States*, 359 F.3d 695, 697 (4th Cir. 2004))).

Defendant argues that because no reasonable factfinder could conclude that Plaintiff did not traffick SNAP benefits, Defendant is entitled to summary judgment, affirming the administrative determination that Plaintiff engaged in trafficking. (Doc. 17-1, p. 18). Further, Defendant argues that the penalty imposed, permanent disqualification, is proper both under the law and because Plaintiff does not challenge the propriety of the sanction. (Doc. 17-1, pp. 18-20).

## 2. Plaintiff's Opposition (Doc. 20)

Plaintiff opposes Defendant's motion. It argues that the FNS conducted an investigation, but based its decision to charge Jasmin Food Mart with trafficking solely on the EBT data analysis. (Doc. 20, p. 1 (citing the Charge Letter, A.R. 122-141)). Plaintiff argues that the documentation provided to FNS on October 24, 2016, explained the EBT transactions, specifically including the inventory invoices demonstrating regular seafood sales and higher volume of hot food purchases after the flood. (Doc. 20, p. 2 (citing A.R. 148-210)). Plaintiff also points to the EBT receipts, credit card receipts, and inventory invoices generated between April 2016 and November 2016 that Plaintiff provided to the FNS. (Doc. 20, p. 2 (citing A.R. 270-1463)).

Plaintiff agrees with Defendant's stated standard for motion for summary judgment and for review of administrative determinations. (Doc. 20, pp. 2-3). However, Plaintiff argues that Defendant "conflates" Plaintiff's burden of proof with the summary judgment standard by stating that Plaintiff cannot satisfy its evidentiary burden of proof and, therefore, no reasonable factfinder could conclude that Plaintiff did not traffick SNAP benefits. Rather, Plaintiff argues that it "need only come forward with specific facts showing a genuine issue for trial" and that the facts and

evidence, when viewed in the light most favorable to Plaintiff, demonstrate a genuine issue of material fact, thereby defeating Defendant's motion.  (Doc. 20, p. 3).

Plaintiff addresses each of Defendant's categories of suspicious activity that Defendant argues evidences trafficking.  (Doc. 20, pp. 4-10).  Plaintiff argues that the "issue of fact that undercuts all of Defendant's arguments is that Jasmin Food Mart is a neighborhood store and the primary source for fresh and boiled seafood for nearby residents".  (Doc. 20, p. 4).  Plaintiff argues that if the FNS had entered the "employee-only" walk-in cooler when it made its site visit, then it would have "observed multiple large bags of fresh crawfish, crabs, and/or shrimp, consistent with the invoices from seafood distributors that Jasmin Food Mart provided to the FNS".  (*Id.* (citing A.R. 270-1463)).  Plaintiff further argues that there is a genuine issue of material fact in the FNS site visit report that states that there was no indication inside or outside Jasmin Food Mart that it sells seafood or meat by the pound.  (Doc. 20, pp. 4-5 (citing A.R. 66-87)).  Plaintiff contends that it does not advertise the price of seafood because the price fluctuates with the market and because it sells seafood in a "bundle" deal with other SNAP-eligible items for a flat price.  (Doc. 20, p. 4 (citing Doc. 20-2)).  Further, Jasmin Food Mart advertises its fresh seafood on Coca-Cola signs posted on its fencing, advertising the sale of boiled crawfish.  (*Id.*).  Therefore, Plaintiff argues, the FNS site visit and investigation was flawed and improperly concluded that there was "no hint" of the sale of high-priced specialty items or "bundles" and that it was a "low-dollar value" store. It also improperly concluded that the seafood was only available as a "hot meal" purchase.  (Doc. 20, p. 5 (citing A.R. 66-87)).  Plaintiff also argues that because Jasmin Food Mart is conveniently located and has built a relationship with its customers and offers competitive pricing, it is the mart of choice in the area for seafood.  (Doc. 20, p. 5).

Plaintiff next addresses the "multiple transactions by individual accounts", cited as suspicious EBT activity. (*Id.*). Plaintiff first argues that the FNS only identified seventeen individual transactions over six months out of 11,692 total transactions. (*Id.* (citing A.R. 105)). Plaintiff then argues that the high dollar and multiple purchases made in the same day by the same account as well as the facilities better suited to small volume purchases can be explained by "ample evidence": (1) because of the store's proximity, many customers walk to the store several times within one day or the week, (Doc. 20, p. 6 (citing Doc. 20-2; A.R. 144)); (2) the lack of shopping carts and baskets supports that customers make multiple trips to the store and purchase fewer items within one visit, (Doc. 20, p. 6); (3) multiple transactions are sometimes made in one visit because customers sometimes purchase items for their neighbors, (Doc. 20, p. 6 (citing Doc. 20-2)); and (4) customers sometimes purchase seafood separate from other SNAP-eligible items. (*Id.*). Plaintiff argues that these four points raise issues of fact regarding whether the sets of multiple transactions identified by the FNS are evidence of trafficking.

Plaintiff argues that Defendant's argument that transactions at Jasmin Food Mart were "excessively large" compared to "other similar stores in Louisiana" is unreliable because it is based on analysis and conclusions "colored by the flawed and incomplete" site visit. (Doc. 20, p. 7). Plaintiff specifically points to Defendant's statement that there is "no evidence that [Plaintiff] sold specially-priced meat or seafood bundles or packages". (*Id.* (citing Doc. 17-1, pp. 14-15)). Plaintiff reiterates its initial argument of "ample evidence" that Jasmin Food Mart sells both fresh and boiled seafood. (Doc. 20, p. 7 (citing Doc. 20-2; A.R. 148-210, 270-1463)). Further, Plaintiff highlights that Defendant compares Jasmin Food Mart to "20 nearby convenience stores", none of which sell fresh or boiled seafood based on the evidence in the administrative record. (Doc. 20, p. 7 (citing A.R. 111; Doc. 17-1, p. 15)). Of the three "small grocery stores" to which Jasmin Food

Mart was compared, two sell frozen seafood and the third sells no seafood, which Plaintiff argues is an unreliable comparison. (Doc. 20, p. 7 (citing A.R. 213)). In summary, Plaintiff argues that there is a disputed factual basis in Defendant's comparison of Jasmin Food Mart and other stores in its area; therefore, Plaintiff argues, since reasonable persons could conclude that the high value transactions are due to the high inventory of fresh and boiled seafood, summary judgment is not appropriate. (Doc. 20, pp. 7-8).

In response to Defendant's argument that customers visited other SNAP-authorized stores and then then spent large dollar amounts at Jasmin Food Mart, which was suspicious activity indicative of trafficking, Plaintiff relies on the premise that Jasmin Food Mart is unique to its area because it sells fresh and boiled seafood. (Doc. 20, p. 8 (citing Doc. 17-1, p. 16)). For example, Plaintiff argues that a customer may visit a Walmart Superstore, that has a larger selection of SNAP-eligible inventory and spend $26.10, but then visit the neighborhood Jasmin Food Mart for the competitive pricing of boiled crawfish that was not available at the Walmart Superstore. (Doc. 20, p. 8 (citing A.R. 116; Doc. 17-1, p. 15; Doc. 20-2)).

Plaintiff lastly addresses Defendant's chart comparing Jasmin Food Mart's sales between April and September 2016 with regard to the effects of the flood of August 2016 and the hot foods exception to the SNAP rules. Plaintiff argues that it is unfair to compare Plaintiff's sales in August and September 2016 to April and May 2016 and conclude that the difference is "minimal" and, therefore, cannot be attributed to the effects of the flood. Again, Plaintiff relies on seafood sales – the peak of crawfish season is April and May, which are the higher volume and higher priced transactions months, and to compare same to September 2016, which recorded more than 2,000 additional transactions than in July, and conclude that this is "insignificant" is faulty. Plaintiff claims that the hot foods exception cannot be compared to the "crawfish months". Issues of fact

regarding the true effect of the flooding and hot foods exception should preclude summary judgment. (Doc. 20, pp. 9-10).

### 3.    Defendant's Reply (Doc. 21)

Defendant argues in reply that FNS reached its decision to charge Plaintiff with trafficking after "identifying hundreds of EBT transactions that could not be explained as the exchange of SNAP benefits for eligible food, and from information gathered during a … site visit". (Doc. 21, p. 1). Defendant represents that there were 17 total individual transactions that were considered, eight sets of "multiple transactions within an unusually short time frame", and 889 excessively large purchases. This is consistent with Plaintiff's argument. (Doc. 21, p. 1 (citing A.R. 109-114, 122, 125-141)). Defendant then argues that because "Plaintiff has not proven that every suspicious transaction was legitimate, Defendant is entitled to summary judgment". (Doc. 21, p. 1 (citing 7 U.S.C. § 2021(b)(3); 7 C.F.R. § 278.6(e)(1)(i); *Idias*, 359 F.3d at 697 ("[A] firm may be permanently disqualified from SNAP based upon a single incident of trafficking."))). Defendant argues that the issue before the Court is whether Plaintiff has satisfied its burden of raising issues of fact as to the suspicious transactions identified by the FNS. (Doc. 21, pp. 1-2 (citing *Kahin v. United States*, 101 F.Supp.2d 1299, 1303 (S.D. Cal. May 2, 2000); *Tony's Pantry Mart Inc. v. United States*, Civ. A. No. 15-2967, 2017 WL 514184, *5 (N.D. Ill. Feb. 8, 2017)(quoting *Young Choi Inc. v. United States*, 639 F.Supp.2d 1169, 1178 (D.Haw. May 28, 2009)("[t]o defeat a motion for summary judgment, the nonmoving party needs to raise material issues of fact [as] to every alleged violation charged against it")); *Ganesh v. United States*, 658 Fed.App'x. 217, 219 (6th Cir. 2016))). Defendant contends that none of Plaintiff's seafood theory arguments are sufficient to defeat summary judgment. (Doc. 21, p. 2).

Defendant argues that Plaintiff's "boiled seafood" argument should be disregarded because it was raised for the first time in opposition to the motion for summary judgment. (Doc. 21, p. 2). Further, Defendant argues that Plaintiff "offers no evidentiary support" for the premise that boiled seafood was served cold in order to comply with 7 C.F.R. 271.2, and, therefore, cannot defeat summary judgment. (Doc. 21, p. 3).

Defendant argues that Plaintiff's argument based on its customers' shopping practices is not supported by the Affidavit of Mr. Nguyen. Rather, Defendant contends that Plaintiff's affidavit is composed of general statements of general observations and the argument made by Plaintiff in its opposition, in contrast, is more specific. Also, Plaintiff's argument does not specifically address each of the 8 sets of transactions within a short amount of time; Plaintiff simply applies the general argument of customers' shopping habits in an over-arching, conclusory way, which is insufficient for summary judgment. (Doc. 21, p. 4 (citing *Tony's Pantry Mart Inc*., at *4 (quoting *Rockland Conv. Store*, at *8 ("[B]ecause summary judgment may be defeated only when the plaintiff identifies a genuine factual dispute as to each alleged violation, general statements about [customer's] shopping patterns or other [customer] practices are not enough to create a triable issue of fact.")))).

Defendant also takes issue with Plaintiff's seafood argument in response to the excessive transactions that allegedly totaled over 880 in number. Defendant's argument is that Plaintiff lacks any evidence that each of these "excessive" transactions were actually for the purchase of fresh or boiled seafood. Defendant questions where the itemized receipts are that show that the high dollar transactions were attributed to the sale of seafood. Without closing this gap, Plaintiff's "evidence" is insufficient on summary judgment. (Doc. 21, p. 5).

**B.      Applicable Legal Authority - SNAP**

Congress established the federal food stamp program "[t]o alleviate ... hunger and malnutrition" and "permit low-income households to obtain a more nutritious diet through normal channels of trade by increasing food purchasing power for all eligible households who apply for participation." 7 U.S.C. § 2011.  Congress amended the statute in 2008.  The federal food stamp program is now known as the Supplemental Nutrition Assistance Program and is referred to as SNAP or the food stamps program interchangeably. *Jerusalem Halal Meats, Inc. v. United States*, No. 17-1423, 2019 WL 1026302, *1 (S.D. Tex. Feb. 7, 2019).  SNAP benefits are administered by the USDA. *Sharif v. United States*, No. 16-67, 2017 WL 58837, *1 (N.D. Miss. Jan. 5, 2017). The FNS oversees the program and provides food stamps to states participating in the program, and the states then distribute the food stamps to qualified individuals and households.   "The assistance provided is focused on increasing the food purchasing power of eligible households by supplementing the funds families have to spend on food with SNAP benefits, to purchase eligible food items at authorized retail stores." *Id.*  The FNS provides eligible households with EBT cards, which are used like credit cards at the cash register to exchange SNAP benefits for eligible food. *See* 7 U.S.C. §§ 2012(i), 2016(a).  These EBT cards may be used "only to purchase food from retail food stores which have been approved for participation" in SNAP, 7 U.S.C. § 2016(b), and "may be accepted … only in exchange for eligible food," and "may not be accepted in exchange for cash."  7 C.F.R. § 278.2(a).

The FNS regional office "shall ... disqualify a firm permanently if" the firm has engaged in the trafficking of food stamps. 7 C.F.R. § 278.6(a). "Trafficking means the buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via EBT cards, card numbers and personal identification numbers ("PIN"s), or by manual voucher and signature,

for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others, or acting alone." 7 C.F.R. § 271.2. Food stamp trafficking unquestionably undermines the goals of the food stamp program. *See* H.R. REP. NO. 271, 99th Cong. (1st Sess.), *reprinted in* 1985 U.S.C.C.A.N. 1103, 1260; S. REP. NO. 504, 97th Cong. (2d Sess.), *reprinted in* 1982 U.S.C.C.A.N. 1641, 1700–02. The government electronically monitors participating retailers' EBT transactions, conducts periodic reviews of retailers, and initiates investigations of stores when suspicious transactions occur. *Sharif*, at *1.

A firm's disqualification from participation in the program "result[s] from a finding of a violation on the basis of evidence that may include facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants and Children (WIC)." 7 C.F.R. § 278.6(a). The regulations have no requirement that a store owner must receive a warning, demonstrate intention to violate the regulations, or benefit from the trafficking. *Goldstein v. United States*, 9 F.3d 521, 523-24 (6th Cir. 1993); *Kim v. United States*, 121 F.3d 1269, 1273-74 (9th Cir. 1997). The penalty for trafficking in food stamps is permanent disqualification. 7 U.S.C. 2021(b)(3)(B).

A retail food store or wholesale food concern that is subjected to a penalty under 7 U.S.C. § 2021 may first timely seek administrative review of the validity of the determination, and upon the final administrative determination, may timely seek judicial review of the agency determination pursuant to 7 U.S.C. § 2023(a)(13). Such suit "shall be a trial *de novo* by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). *De novo* review is broader than the review standard under the Administrative Procedure Act. *Modica v. United States,* 518 F.2d 374, 376 (5th Cir.1975). The Administrative

Procedure Act provides in pertinent part as follows: "To the extent necessary to the decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706. *De novo* review of an agency decision encompasses more, "requir[ing] the district court to examine the entire range of issues raised, and not merely to determine whether the administrative findings are supported by substantial evidence." *Modica,* 518 F.2d at 376. "The court must reach its own factual and legal conclusions based on the preponderance of the evidence, and should not limit its consideration to matters previously dealt with in the administrative proceedings." *Ruhee M., Inc. v. United States,* No. 05–1547, 2006 WL 1291356, *2 (S.D.Tex. May 5, 2006) (citing *Modica,* 518 F.2d at 376). The aggrieved party bears the burden of establishing the invalidity of the administrative action by a preponderance of the evidence. *Redmond v. United States,* 507 F.2d 1007, 1011 (5th Cir.1975). The aggrieved party "may offer any relevant evidence available to support his case, whether or not it has been previously submitted to the agency, and the agency itself may offer any evidence available to support its action, whether or not in the administrative record." *Id.* at 1012. "If the court determines that such administrative action is invalid, it shall enter such judgment or order as it determines is in accordance with the law and the evidence." 7 U.S.C. § 2023(a)(16).

A retail food store or wholesale food concern that is subjected to a penalty under 7 U.S.C. § 2021 may similarly first seek timely administrative review and then judicial review of whether the penalty was in accordance with the applicable regulations promulgated under SNAP. Judicial review of a sanction imposed under SNAP is limited to the determination of whether the sanction is valid; a sanction is valid as long as it is not "arbitrary and capricious," that is, "unwarranted in law or without justification in fact." *See Butz v. Glover Livestock Comm'n Co.,* 411 U.S. 182, 185–

89, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973); *Goodman v. United States,* 518 F.2d 505, 511–12 (5th Cir. 1975). *See also Estremera v. United States,* 442 F.3d 580, 585 (7th Cir.2006); *Woodard v. United States,* 725 F.2d 1072, 1077 (6th Cir.1984) (citing *Kulkin v. Bergland,* 626 F.2d 181, 184 (1st Cir.1980)); *Cross v. United States,* 512 F.2d 1212, 1218 (4th Cir.1975) (en banc). However, the court may conduct *de novo* review of facts that are primarily relevant to the imposition of sanctions. *See, e.g., Mohamed v. USDA Food and Nutrition*, No. 05-00657, 2009 WL 2986960, *2 (E.D. Cal. Sept. 16, 2009). The district court decides only whether the agency's interpretation was plainly erroneous or inconsistent with its own regulations; otherwise, the agency's construction of its own regulations is controlling. *Silwany–Rodriguez v. INS,* 975 F.2d 1157, 1160 (5th Cir.1992).

"Cases arising under [SNAP] may be resolved in the district court by summary judgment where there are no genuine issues of material fact." *Cullen Drive–In Grocery v. Block,* 778 F.2d 1141, 1142 (5th Cir.1985) (citing *Modica,* 518 F.2d at 376).

C.    **Analysis**

"Pursuant to 7 U.S.C. § 2023(a)(15), the Court will conduct a *de novo* review of the agency's determination that Plaintiff engaged in trafficking of SNAP benefits." *Sharif*, 2017 WL 58837, *3; *see also, Razzak v. United States*, 2014 WL 582079, *2 (W.D. Tex. Feb. 13, 2014)("When challenging a SNAP disqualification decision, an aggrieved store owner is entitled to a 'trial *de novo*' by the district court" pursuant to 7 U.S.C. § 2023(a)(15)); *see also, Jerusalem Halal Meats*, 2019 WL 1026302, *4 ("The district court review *de novo* the 'validity of the questioned administrative action in issue'" pursuant to 7 U.S.C. § 2023(a)(15)). On *de novo* review, the Court may look beyond the administrative record and reach its own factual and legal conclusions; however, the burden is placed upon Plaintiff to prove by a preponderance of the

16

evidence that the violations did not occur. *Kim*, 121 F.3d at 1271. The "Court must consider the evidence before it and determine if there exists a genuine issue of material fact as to the validity of the FNS's determination of trafficking". *Sharif,* at *3; *Kahin*, 101 F.Supp.2d at 1302.

To "defeat a motion for summary judgment, the nonmoving party needs to raise material issues of fact [as] to every alleged violation charged against it." *Young Choi*, 639 F.Supp.2d at 1178; *see also, McClain's Mkt. v. United States*, 214 Fed. Appx. 502, 505 (6th Cir. 2006)("To survive summary judgment, a plaintiff in a Food Stamp Program disqualification case must raise material issues of fact as to each alleged violation."); *Jackson v. United States*, No. 08-2770, 2009 WL 941766, at *7 (N.D. Cal. Apr. 3, 2009)("In order to preclude summary judgment, Plaintiff must raise material issues of fact as to each of the violations charged against her store that are established in the administrative record."). This is required because "permanent disqualification is warranted on 'the first occasion' of coupon trafficking[;] [thus] it is Plaintiff's burden to raise material issues of fact as to each of the transactions set forth as suspicious by the FNS." *Kahin*, 101 F.Supp.2d at 1303; *see also, McClain's Mkt*., 411 F.Supp.2d at 777. The non-movant's explanation and evidence must account for all of the suspicious activity highlighted by the FNS in its final decision. *See Kahin*, 101 F.Supp.2d at 1303; *see, e.g., AJS Petroleum, Inc. v. United States*, 2012 WL 683538, at *6 (D.Md. Mar. 1, 2012).

### 1.    The EBT ALERT scans and site visit

The EBT ALERT scans collected data from April 2016 through September 2016. (A.R. 103-121). FNS conducted a site visit on June 2, 2016. (A.R. 66-87, 103-121). The report of the site visit stated that the variety and quantity of SNAP-eligible goods was limited. (A.R. 66-87, 103-121). The mart had two cash registers, one EBT point of sale device, and no shopping carts or baskets. (A.R. 66-87). The checkout had no conveyor belts. (A.R. 81-82). FNS did not find a

"strong basis to attract customers". (Doc. 17-1, p. 6 (citing A.R. 66-87, 107-109)). The EBT scans found that multiple transactions were made from individual accounts in short time frames. (A.R. 122, 125). On September 7, 2016, one household redeemed $150.00 in benefits at 7:10 p.m. and then $59.75 in benefits one minute later. (A.R. 125). On July 9, 2016, the same household redeemed $46.19 in benefits and then less than four hours later redeemed another $293.16 in benefits. (A.R. 125). ALERT identified 8 sets of transactions valued at $1,448.56 and completed within short time frames. (A.R. 125). EBT recorded excessively large transactions compared to transactions in similar stores parish-wide. (A.R. 122, 126-141). On August 25, 2016, one household redeemed $200.00 at 4:54 p.m., a second $200.00 redemption at 5:10 p.m. the next day, and a third $12.26 redemption two minutes later. (A.R. 115, 126).

The average SNAP transaction at Jasmin Food Mart totaled $8.50. (A.R. 110). Of the mart's 11,692 transactions in the investigation period, 889 were $33.00 or more. (A.R. 110). Within two miles or less of Jasmin Food Mart, there are 30 SNAP-authorized firms, including two supermarkets, two superstores, three medium grocery stores, four small grocery stores, and 20 convenience stores. (A.R. 111). The supermarkets, superstores, and grocery stores are better stocked with SNAP-eligible inventory. (A.R. 111). However, instances were flagged where larger dollar amounts were spent at Jasmin Food Mart than at the larger stores nearby in the same day. On July 9, 2016, a household spent $339.35 at Jasmin Food Mart and $25.81 at a larger supermarket. (A.R. 115). On June 18, 2016, a household spent $126.00 at Jasmin Food Mart and $26.10 at a Walmart Superstore. (A.R. 116). On July 11, 2016, a household spent $125.00 at Jasmin Food Mart and $1.79 the day before at a supermarket. (A.R. 116). Defendant reported the following findings over the course of the investigative period: April 2016, $40,762.11 in sales, 2,177 transactions; May 2016, $35,742.81 in sales, 2,072 transactions; June 2016, $26,201.93 in

sales, 1,611 transactions; July 2016, $11,628.59 in sales, 967 transactions; August 2016 $24,359.96 in sales, 1,844 transactions; September 2016 $39,499.07 in sales, 3,021 transactions. (A.R. 105, 1483-1484).

Defendant's reporting of statistical data like that immediately above is typical of SNAP trafficking cases. The data reported on Jasmin Food Mart is similar to the data reported of marts in other trafficking cases. For comparison, see *Sharif v. United States*, a neighborhood mart was investigated from May to October 2015. On one EBT scanner, there were 41 flagged transactions, and each flagged transaction took place within 1:57 minutes or less of the previous transaction. The total amount flagged was $2,714.12. The mart had one cash register, one point of sale device for EBT benefits, an adding machine, no shopping baskets or shopping carts for customer use, and a small service counter area to process orders. The mart did not have optical scanning equipment which quickly adds and separates food and non-food totals and moves the items along for bagging. A second EBT scanner registered 64 sets of violations completed by 44 different households. The site visit did not indicate any compelling reason for customers to consider this mart a first-choice destination to fulfill large purchases. One household visited the mart three times within less than 20 hours and spent a total of $217.15. Considering the mart had a less abundant stock than neighboring supermarkets and super stores, it was illogical that households would spend their benefits in the amounts registered where the quality, quantity and selection of eligible food items was limited and prices are incomparable. A third EBT scanner recorded the largest purchase in the time period was $96.45, and the average transaction was $13.78. Out of 8,006 transactions, 966 had an amount of or over $26.00. The households who shopped at the mart also shopped at supermarkets or superstores around the area. The *Sharif* court found that the permanent

disqualification for trafficking was valid, and summary judgment was granted in favor of the United States. *Sharif*, at *4.

*See also, Maredia v. United States*, Civ. A. No. 13-1124, 2016 WL 7736585 (S.D. Tex. Aug. 16, 2016), where the court granted summary judgment in favor of the United States on a trafficking charge. The ALERT data showed: 18 households spent 90% of their accounts within two days; transactions occurred between one minute and ten hours of each other; 677 transactions were flagged from 61 households; the mart did not offer fruit or fresh meat and the inventory did not support the large transactions; 32 pairs of transactions were within a short amount of time and flagged; one cash register, one EBT point of sales device, limited counter space, no shopping carts or baskets, no conveyor belts or scanners were noted; and 390 transactions exceeded the average transaction amount. *Maredia*, *3-4.

*See also*, *Tikabo v. United States*, Civ. A. No. 16-2197, 2017 WL 5075275 (S.D. Tex. Aug. 21, 2017), where the United States' motion for summary judgment was granted, supporting its permanent disqualification of the subject grocery from SNAP. The grocery was 128 square feet, had one cash register, no storage, no carts or baskets, no scanner, and no counter at check-out. SNAP-eligible foods were limited. EBT analysis and an on-site investigation were conducted. The large majority of the SNAP transactions were for an even amount (ending in zero cents ".00"), which did not coincide with the prices and volume of offered items and appeared contrived. *Tikabo*, *3.

## 2. Jasmin Food Mart's explanation

### a. *FNS only relied on EBT data.*

Plaintiff highlights that the FNS decision to charge Jasmin Food Mart with trafficking appears to have been based only on EBT data analysis. (Doc. 20, p. 1). It is well-established that

it is sufficient for the United States to rely solely on EBT data in deciding to permanently disqualify a firm due to trafficking. 7 U.S.C. § 2021(a)(2); 7 C.F.R. § 278.6(a); *Kingway v. Supermarkets, Inc. v. United States*, 545 F.Supp.2d 613, 617 (S.D. Tex. 2008)("Courts have upheld a store's disqualification from the food stamp program based on an analysis of electronic benefit transfer system data."); *Idias*, 359 F.3d at 698 ("There can also be little question that the United States was entitled to use [electronic benefit transfer data] to prove that [the plaintiff] trafficked in food stamps."); *Saleh v. United States*, No. 02-8846, 2004 WL 549457, *1-3 (N.D. Ill. Mar. 19, 2004); *Kahin*, 101 F.Supp.2d at 1303-04; *Maredia*, *4 ("numerous cases and circuits have upheld disqualification based on an EBT analysis similar to the case at hand"); *Young Choi, Inc.*, 639 F.Supp.2d at 1178 ("The law is clear that FNS may base its finding of a violation on analysis of EBT transaction reports or on-site store surveys."); *Duchimaza v. United States*, 211 F.Supp.3d 421, 432-33 (D.Conn. 2016)("The Government may permanently disqualify a retailer on the basis of EBT data."); *Sharif*, *5.

Plaintiff did not cite to or discuss any jurisprudence denying summary judgment because of the FNS's reliance on EBT data. Conversely, courts have frequently granted summary judgments disqualifying retail stores based on the statistical analysis of an EBT transaction report. *See Kingway Supermarkets, Inc*, 545 F.Supp.2d at 617 (summary judgment granted – "the food stamp regulations explicitly state that a firm may be disqualified on the basis of evidence obtained through a transaction report); *Idias*, 359 F.3d at 696-97 (EBT data sufficient to establish trafficking; summary judgment granted); *African Grocery Store v. United States*, 2008 WL 782731 (E.D. Mo. Mar. 20, 2008)(relying on 32 same-cents/even dollar sales, 85 sales in excess of $200.00, and 17 sales in impossibly short period of time to grant summary judgment); *Kahin*, 101 F.Supp.2d at 1303-04 (relying on high value sales, multiple same-cents figures to support summary

judgment); *see also, Sharif*, 2017 WL 58837; *Maredia*, 2016 WL 7736585; *Tikabo*, 2017 WL 5075275; *Jerusalem Halal Meats*, 2019 WL 1026302; *Tony's Pantry Mart Inc.*, 2017 WL 514184; *Young Choi Inc.*, 639 F.Supp.2d 1169; and *Rockland Convenience Store*, 2011 WL 5120410, all of which granted summary judgment based on similar evidence of trafficking.

> b.    *Jasmin Food Mart's general customer habits and inventory*

Plaintiff argues, generally, that its customers' purchasing habits, its fresh seafood sales, and the August 2016 flooding in the Baton Rouge area accounted for the higher amounts of sales and the higher volume of transactions. (Doc. 20, p. 2 (citing A.R. 144-145)). However, Plaintiff does not point to or provide specific evidence of a specific SNAP-eligible customer and that individual's purchases within the investigated time period. Plaintiff does not point to a specific receipt evidencing the purchase of fresh or boiled seafood, the dollar amount associated with the sale, and that it occurred in the relevant time period. Similarly, Plaintiff does not produce the same evidence for hot food items post-flood. (Doc. 20; AR).

Plaintiff does, however, provide "supporting documentation" of its customers' general purchasing habits and that seafood was sold at Jasmin Food Mart, including inventory invoices from seafood and meat distributors, purportedly demonstrating seafood sales and hot food purchases. (A.R. 148-210). However, while relevant to its inventory and offerings to the public, Plaintiff does not explain how these invoices support specific sales for specific amounts under SNAP. Were SNAP benefits utilized to purchase seafood and hot food items post-flood? If so, what seafood items were purchased and in what quantity? When? For what total amount? The record fails to raise an issue of fact in that regard.

Plaintiff later provided EBT receipts and credit card receipts in response to the letter advising that it had been permanently disqualified. These are the approximately 1,200 pages of

"additional documentation" referenced by Defendant. (A.R. 270-1463). Yet, Plaintiff fails to point the Court to any specific record evidence challenging any of the specific transactions relied upon by Defendant.

Plaintiff notes that "only eight sets" of EBT transactions were flagged over six months when the transactions recorded totaled 11,692. (A.R. 105). Plaintiff explains that due to its location, many customers visit the mart several times per week or more than once in a day. (A.R. 144). Multiple transactions are made in one visit because customers purchase items for other neighborhood households. (Doc. 20-2). Plaintiff insists that the "excessively large" transactions are due to the fact that Jasmin Food Mart is the only seafood vendor in the area. (Doc. 20, p. 7). It maintains that it is faulty to compare average purchases from Jasmin Food Mart and the surrounding markets because Jasmin Food Mart is the only mart offering fresh and boiled seafood. (A.R. 213).

In opposing Defendant's charge of trafficking, Plaintiff points to its convenient location within walking distance of its customers, its long-standing relationship between the store and customers, its "competitive pricing", and being the go-to store for seafood purchases in the area. (Doc. 20, p. 5). However, Plaintiff does not offer evidence that its customers, specifically SNAP-beneficiary customers, chose Jasmin Food Mart over others for these or any other reasons. Plaintiff does not offer evidence of comparison or "competitive" pricing.

Plaintiff offers the Affidavit of Peter O. Nguyen in support of its opposition; however, Mr. Nguyen's affidavit only contains general observations and does not contain an attestation relevant to any of the flagged transactions made the subject of the FNS investigation of Jasmin Food Mart. For example, Mr. Nguyen attests: "I have observed customers walking to and from the store," (Doc. 20-2, p. 1, ¶ 2); "I have observed customers visiting the store several times in a single week

or in a single day," (Doc. 20-2, p. 1, ¶ 4); "I have observed customers make multiple transactions in a single visit," (Doc. 20-2, p. 1, ¶ 5); "Jasmin Food Mart regularly sells fresh and boiled seafood by the pound," (Doc. 20-2, p. 2, ¶ 8); "Jasmin Food Mart does not typically post prices for seafood items because the price fluctuates with the market," (Doc. 20-2, p. 3, ¶ 11); and "Jasmin Food Mart occasionally sells fresh or boiled seafood as part of a "bundle" deal to regular customers," (Doc. 20-1, p. 3, ¶ 12).  General statements about observations of customers' shopping patterns or general inventory offered to the public are not enough to create a triable issue of fact.  *Tony's Pantry Mart Inc.*, at *5 (citing *Rockland*, at *8)); *see also, McClain's Mkt.*, 411 F.Supp.2d at 777 (store owner's affidavit presented no explanation of any of the 149 transactions asserted against the plaintiff but only presented general justifications for large expenditures and was insufficient).  *See, Tikabo*, *6; *see also, Jerusalem Halal Meats, Inc. v. United States* (where summary judgment was granted in favor of the United States because the affidavits offered by the plaintiff in opposition were "conclusory" and did not specifically deny the transactions cited in the violations).

c.      *Jasmin Food Mart is the local source for seafood.*

In addition to the argument above regarding the mart's seafood inventory, Plaintiff relies, almost entirely, on the theme that Jasmin Food Mart is a neighborhood store and the only local source for fresh and boiled seafood.  (Doc. 20, p. 4).  Plaintiff claims that FNS did not obtain or did not consider this when making its decision to permanently disqualify Plaintiff, (A.R. 66-87), and did not inspect the walk-in cooler where the fresh seafood inventory was stored.  (Doc. 20-2).  Plaintiff claims that the inventory in the cooler would support the invoices from distributors.  (Doc. 20, p. 4 (citing A.R. 270-1463)).  However, and key to the motion before the Court, Plaintiff does not connect the seafood inventory to the SNAP transactions at Jasmin Food Mart during the investigation period.  Plaintiff goes on to provide evidence of general store policies regarding their

pricing patterns for seafood and "bundle" deals offered to SNAP customers. (Doc. 20, p. 4; Doc. 20-2). Plaintiff does not connect these prices or deals with transactions flagged for trafficking in the relevant time period.[2] While Plaintiff provides an inventory of fresh and boiled seafood and an argument that it is the only vendor for these specialty items in the area, it does not provide evidence that SNAP customers chose Jasmin Food Mart for these items, that these items were purchased in EBT transactions generally or in the EBT transactions flagged by FNS, or the average value of SNAP benefits utilized in the purchase of seafood.

Plaintiff provides an affidavit and inventory documentation as well as photographs to support its theme of selling fresh and boiled seafood, items that are represented to be "high dollar" items and in high demand in the relevant neighborhood. (Doc. 20-2; A.R. 151-210, 231-1463). However, the Court finds these arguments and evidence unpersuasive. Overall, Plaintiff's argument of Jasmin Food Mart's unique seafood offerings is conclusory. Accepting the inventory of seafood as true and the "demand" at Jasmin Food Mart as it is the only neighborhood vendor for fresh and boiled seafood, Plaintiff has not shown a genuine issue of material fact as to how this inventory is connected to the SNAP transactions flagged between April and September 2016. While the Court understands that the price of seafood fluctuates based on the market and season, Plaintiff has provided no evidence of the price per pound in the relevant six-month time period, average sales in terms of pounds, or the average total prices of seafood purchases. There is no evidence of such sales rising into the range of $200.00.

---

[2] Plaintiff challenges Defendant's chart of average sales at Jasmin Food Mart and numbers of transactions from April 2016 to September 2016 by arguing that the peak seafood season is in April and May, the inference being that it is misleading to compare non-peak seafood months to peak seafood months of April and May. However, Plaintiff explained the "suspicious" high dollar transactions in July ($200.00) with the mart's seafood sales. Utilizing Plaintiff's own logic, if July sales should not be compared to April or May sales because July is not peak seafood season, a general explanation of "seafood sales" is not a reliable explanation for the high dollar transactions in July.

### 3. The undisputed summary judgment evidence raises no genuine issue of material fact that the alleged violations did not occur.

Viewing the evidence and all reasonable inferences in Plaintiff's favor, Plaintiff's explanations regarding the store's suspicious SNAP activity are insufficiently specific to raise a genuine factual dispute for trial because "[t]o defeat a motion for summary judgment, the nonmoving party needs to raise material issues of fact [as] to every alleged violation charged against it." *Tony's Pantry Mart Inc.*, at *5 (citing *Young Choi*, 639 F.Supp.2d at 1178); *see also McClain's Mkt.*, 214 Fed. Appx. at 505. The Court acknowledges that it is not confined to the administrative record in its *de novo* review of the final agency action; however, Plaintiff has not produced any evidence in opposition to the instant summary judgment motion specific to the actual SNAP transactions that triggered the trafficking charge.

A dispute of material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The affidavit and seafood argument is not enough for a reasonable jury to find, by a preponderance of the evidence, that the violations did not occur, as Plaintiff must show. *See W&H Food & Gas, Inc. v. United States*, Civ. A. No. 17-11096, 2018 WL 4961531, *2 (E.D. Mich. Oct. 15, 2018)("A mere denial of any wrongdoing does nothing to even slightly tip the balance of evidence in Plaintiff's favor."); *Abdelkhalik v. United States*, 1996 WL 41234, *2 (N.D. Ill. Jan. 30, 1996)("Plaintiff's denials do not prove that the violations did not occur.").

Plaintiff does not rebut the specific transactions the FNS flagged. Simply put, evidence specifically linking Plaintiff's arguments to flagged SNAP transactions is missing. Argument unsupported by evidence does not create a genuine issue about the legitimacy of the irregular EBT transactions. *Sharif*, *5; *Rodriguez Grocery & Deli v. U.S. Dep't of Agric. Food and Nutrition*

*Serv.*, 2011 WL 1838290, *4 (D. Md. May 12, 2011); *Hajifarah v. United States*, 2011 WL 1575308, *14-15 (D. Me. Apr. 27, 2011). *See, e.g., Arnold v. United States*, 180 F.3d 265 (5th Cir. 1999)(per curiam)(affirming district court's grant of summary judgment in favor of United States permanently disqualifying the plaintiff from participating in food stamp program); *Bordelon v. Block*, 810 F.2d 468 (5th Cir. 1986)(per curiam)(affirming district court's grant of summary judgment in favor of United States permanently disqualifying the plaintiff from participating in the food stamp program); and *Hough v. USDA*, 707 F.2d 866 (5th Cir. 1982)(affirming district court's grant of summary judgment in favor of FNS on the plaintiff's three-year suspension from participating in food stamp program for repeated violative transactions).

For the foregoing reasons, Defendant's motion for summary judgment is granted. Because Plaintiff has not alleged that the Defendant's sanction of permanent disqualification was arbitrary or capricious, (Doc. 1), and does not challenge the sanction in its opposition to Defendant's motion for summary judgment, (Doc. 20), the Court will not address the sanction imposed.

IV.     **Conclusion**

Accordingly,

**IT IS ORDERED** that *Defendant United States of America's Motion for Summary Judgment,* (Doc. 17) is **GRANTED**. This matter is dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on September 23, 2019.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**